IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    -versus-                    **Docket # 6:23-cr-20-WWB-LHP**

ETHAN LIPPER,

        Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

1. Jaime T. Halscott, Esq., an attorney duly admitted to practice law in the United States District Court for the Middle District of Florida, hereby respectfully submits this Memorandum on behalf of the Defendant, Ethan Michael Lipper. Attached to this memorandum and made a part hereof are the following documents:

    **Exhibit A** – Letters of Recommendation from Friends and Family Members

    **Exhibit B –** Certificates of Achievement/Completion

    **Exhibit C** – Forensic Psychological Evaluation Report of Dr. Jeffrey Danziger (TO BE SUBMITTED UNDER SEAL)

    **Exhibit D –** Memorandum by Joel Sickler regarding BOP Placement and Options

## I. PRELIMINARY

2. On February 15, 2023, a Grand Jury returned an Indictment charging Ethan Lipper with Count # 1, Attempted Sexual Enticement of a Minor in violation of 18 U.S.C. § 2422(b), and Count # 2, Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and (b)(1). Mr. Lipper entered a guilty plea to Count # 1 pursuant to a plea agreement with the Government, which was accepted by the Court on June 7, 2023. Sentencing is currently set for November 16, 2023.

3. For the reasons set forth in this Memorandum, and in consideration of the documents attached hereto, the defense respectfully requests that this Court:

    (A) Impose a sentence equal but no greater than the statutory minimum mandatory; or in the alternative

(B)  Impose a non-Guidelines sentence below the applicable Guidelines; or in the alternative

(D)  Impose a sentence at the low end of the applicable Guidelines, and

(E)  Recommend the Attorney General to place Mr. Lipper in a Federal Correctional Institution in accordance with **Exhibit D** or at a location as geographically close as possible to Manalapan, New Jersey, to permit Mr. Lipper's family and friends to visit him without undue burden or hardship;

(F)  Impose no fine or financial penalty at sentence, due to Defendant's inability to pay such a fine;

(G)  Recommend to the Bureau of Prisons that Defendant be permitted to enroll in all available vocational and educational training programs, and rehabilitation counseling that are available; and

(H)  Grant such other and further relief that this Court may deem just and proper.

## II. STATUTORY FACTORS FOR THE COURT TO CONSIDER

4. 18 U.S.C. § 3553(a) sets forth factors for the Court to consider in imposing sentence.  An application of these factors to the facts of the instant case is provided as follows.

> *1. Nature and Circumstances of the Offense and the*
> *History and Characteristics of the Defendant*

5. The United States Supreme Court has held that

> [a] sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and     extent  of  punishment after the issue of guilt has been determined. **Highly relevant - if not essential - to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics**. *See Williams v. New York*, 337 U.S. 241, 247 (1949) (emphasis added)

### a.  Family History

6. The Defendant's family history is accurately reflected in the PSR, ¶¶ 50-59. Rather than repeat those facts, the defense wishes to stress that Ethan Lipper was raised in a loving and nurturing environment with all the advantages a close family provides.

7. The defense also stresses that Ethan Lipper maintains an extremely strong relationship with his parents and his younger sister, as well as strong relationships with extended family and a network of friends in spite if his arrest and conviction. It is to this loving and nurturing environment he will return when he is released from incarceration.

### b. Employment/Educational History

8. Mr. Lipper's educational history and employment history are detailed in Paragraphs # 66-68 of the PSR. In conversations with defense counsel, Mr. Lipper expressed extreme pride in his work at Hidden Disabilities Sunflower as he felt that he was making positive changes in people's lives through his work. That gave him not only a sense of pride but accomplishment, and motivated him (and still motivates him) to pursue similar work in the future whereby he will serve his fellow man. Mr. Lipper also expressed a sense of fulfillment in his work at Disney Springs acting as a performer on stilts, entertaining crowds and putting smiles on faces through his work.

9. While incarcerated, Mr. Lipper has sought to better himself by taking full advantage of every opportunity the Seminole County Jail has to offer at self-improvement. This is evidenced by the several certificates of achievement attached hereto as Exhibit B. Additionally, Mr. Lipper has expressed the desire to further his professional and personal development while serving his sentence so that when he is released he can re-join society as a productive member.

### d. Offense Conduct

10. The offense conduct is accurately detailed in the Pre-Sentence Report, Paragraphs # 11-27. However, it is worth noting that the Department of Probation has determined that there are no identifiable victims in for the count of conviction because Count # 1 involved a fictitious victim. (PSR ¶ 28). While the Government has provided additional post-plea discovery, it is unclear to the defense what connection the people identified in the Government's disclosures have to the instant case. There are no names, no images, and no other identifying information provided in those disclosures from which the defense can draw any connection to the images allegedly distributed in Count # 2, for which Mr. Lipper has not been convicted. Accordingly, this Court should not take that information into consideration in determining a sentence.

*B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

11. As detailed infra, any of the sentences proposed is more than adequate to protect the public from any perceived threat of future crimes by Mr. Lipper. He understands that as a result of his conviction and sentence, his criminal record will reflect a Federal conviction, and that if he is re-arrested for any crime in the future, this conviction will probably serve to act as an enhancement of any future sentence, which may be greater than the sentence he will receive in this case. This is more than sufficient to deter him from the commission of future crimes.

12. Not only will the passage of time and the wisdom of age and experience ensure that Mr. Lipper will not re-offend in the future, but the character and intelligence level of this particular Defendant will ensure that the public will not face any future threat from him. Family and friends have written letters to the Court and copies are attached for the Court's review.

13. Based upon all of these factors, and the letters attached, there is no need to impose a sentence that includes excessive imprisonment to protect the public from Mr. Lipper.

<em>C. The Need for the Sentence Imposed to<br>Afford Adequate Deterrence to Criminal Conduct</em>

14. General or indirect deterrence focuses on general prevention of crime by making examples of specific offenders. The individual defendant is not the focus of the attempt at behavioral change, but rather receives punishment in public view in order to deter other individuals from future criminal conduct.

15. It has been argued that specific deterrence is ineffective at achieving its ultimate goal. Critics of specific deterrence argue that offenders do not pause to consider the possible punishment for a crime they are about to commit, especially in the heat of the moment, and when drugs or alcohol are involved to handicap one's judgment. Some suggest that potential offenders are more likely to be deterred by the threat of being caught rather than the threat of punishment, citing an example of the crime rate falling dramatically in areas where closed-circuit television surveillance systems were introduced. General deterrence has also been heavily criticized for relying on publicity of heavy punishments; it has been described as "the least effective and least fair principle of sentencing." Martin, Jacqueline (2005). The English Legal System (4th ed.), p. 176. London: Hodder Arnold. ISBN 0-340-89991-3.

16. Whatever the viewpoint, imposing any of the alternative sentences proposed by the defense in this particular case is sufficient to achieve that penological goal and deter other wrongdoers from engaging in similar conduct.

<em>D. The Need for the Sentence Imposed to<br>Protect the Public from Further Crimes of the Defendant</em>

17. As detailed above, any of the alternative sentences proposed by the defense are more than adequate to protect the public from any perceived threat of future crimes by Mr. Lipper. He will be supervised for several years while in custody and, following his release, he will remain closely monitored. Accordingly, the public is ensured that it will face little or no detriment from Mr. Lipper for several years if ever following his release from custody.

18. As set forth in Dr. Danziger's report, filed simultaneously herewith under seal, with proper psychological treatment, Mr. Lipper presents a low risk of recidivism or harm to the public. Accordingly, a minimal sentence with conditions of psychological treatment would satisfy the need for the sentence imposed to protect the public.

19. Moreover, during that period of supervision, Mr. Lipper will have matured by virtue of age, experience, and the programs and conditions of supervision, which he plans to take advantage of to better himself. He also recognizes that this conviction and sentence has effectively removed him from the possibility of committing any crimes in the future for a number of reasons. He understands that this conviction will more than likely enhance the severity of any future sentence.

20. That said, there is no need to impose a harsher sentence than a sentence no greater than the minimum proscribed by statute to protect the public from Mr. Lipper, particularly in light of the fact that he does not stand convicted of any crime of violence or drug-related crime.

### E.  The Need for the Sentence Imposed to Provide the Defendant with Needed Education or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner

21. Additionally, as indicated in above, Dr. Danziger's opinion is that with appropriate psychological treatment, there is a low risk of recidivism or risk of harm to the public. The defense respectfully requests that this Court recommend treatment for these conditions by the Bureau of Prisons to be administered during Mr. Lipper's incarceration, and only as needed upon his release to Supervised Release.

22. In addition, Mr. Lipper's family has consulted with an expert to outline possible options within the Bureau of Prisons that will address Mr. Lipper's needs for educational and vocational training in the most effective manner. The Court is respectfully referred to **Exhibit D** for those recommendations, which would also serve the added benefit of being as close to Mr. Lipper's family and base of support.

### F.  The Kinds of Sentences Available

23. Because of the nature of the offense, this Court has wide discretion in imposing a sentence. The legally permissible sentences are as follows:

(a) a sentence of not less than ten (10) years in prison and no more than life, pursuant to 18 U.S.C. § 2422(b); unless the Government files a motion pursuant to Guideline § 5K,

(b) a fine of up to $250,000.00;

(c) a period of Supervised Release of not less than five (5) years and no more than life.

### III. MITIGATING FACTORS

24. The defense has identified a number of mitigating factors for this Court to consider in sentencing Mr. Lipper, as detailed below.

*A. Acceptance of Responsibility*

25. Sentencing Guideline 3E1.1 and the Application Note 3 thereto is clear that

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3 (Relevant Conduct) (see Application Note 1(a)), will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a).

26. By his guilty plea, Mr. Lipper has demonstrated acceptance of responsibility for his transgressions by truthfully answering the Court's questions during the allocation and admitting to the conduct which forms the basis of the offenses for which he stands convicted. By this act of contrition alone, Mr. Lipper would qualify for a 3-level adjustment for acceptance of responsibility under the Sentencing Guidelines.

27. In addition, because Mr. Lipper pled guilty relatively early in this case he has spared the Government the trouble and expense of preparing for trial, and the witnesses and the Court from any resultant inconvenience. The defense respectfully urges the Court to take this into account as well.

28. Putting the act of pleading guilty aside, Mr. Lipper has expressed remorse for his actions and the direction his life has taken. He has recognized that it was his choices that led him to the position that he is in now, and regrets having chosen this path.

*B. The Character and Personality Traits of the Defendant Indicate that He is Unlikely to Reoffend and Commit Future Crimes, or that He is a Danger to the Community*

29. This case is an anomaly; the typical profile for a Defendant charged with the subject offenses is significantly older. Mr. Lipper engaged in the conduct charged in the Indictment as an extremely young adult who was not yet old enough to purchase alcohol or tobacco products. As such, the age gap between himself and the fictitious victim was comparatively very small. While still proscribed by law, this Court should take into consideration the fact that Mr. Lipper was barely out of his teens while attempting to make contact with a teen.

30. The crimes for which Mr. Lipper stands convicted are non-violent, non-drug offenses. There are no indications from his past criminal history (which is almost non-existent) that he has engaged in any crime against a child, particularly a sex-related crime. Accordingly, Mr. Lipper is not a danger to the community. As detailed passim, the defense relies upon the testaments to Mr. Lipper's character and the relationships he has had with his family. Further, for the reasons set forth below, there is little chance Mr. Lipper will re-offend in the future.

31.  Mr. Lipper has maintained a good reputation in the community and has been gainfully employed.  He has the ability to support himself and the good sense to further his own personal development while incarcerated.  He has loving and caring parents and an extensive support network of family and friends who will assist him in his future success.

32. As evidence of his reputation and respect, the Court is directed to the attached letters attesting to Mr. Lipper's character.  Rather than repeat the content of the letters, the following portions are highlighted for then Court:

> Ethan was always warm, helpful and kind and needed very little correction for his behavior.  His many friends always commented on how much they enjoyed his company.  The family never received messages from school or the police regarding any bad behavior.
>
> Regarding his recent activities, Ethan has expressed remorse and shame and has requested getting counseling and therapy until he is better or adhere to whatever the court prescribes.
>
> Ethan has the support of his family and many friends.
>
> **(Letter of Stan and Laurie Lipper, grandparents)**
>
> I might have not shown it, but I was always honored to be "Ethan Lipper's little sister." During middle school, I would have some of the same teachers as him, two years later. Those teachers would always tell me how much they loved having him as a student. This one teacher we both had would tell me stories about how Ethan was a light in the classroom. He was talkative to the other kids, and would have a smile on his face. It would make me happy knowing that my brother was someone that was remembered in such a good way. Moments like that continued into high school. He created our legacy.  Teachers figured that since I had the last name Lipper, that I was as good of a student as Ethan was. In the beginning of each year, teachers would say to me how much they loved having him in their class! It was reassuring knowing that my brother left a good mark at our school.
>
> **(Letter of Rebecca Lipper, sister)**
>
> I have known Ethan since 2007 when he was just 5 years old. Our families lived on the same block in Manalapan, New Jersey and I consider his mother one of my dearest friends. His parents are truly heartbroken. I was shocked and saddened to hear about Ethan's current circumstances and

> have difficulty believing it is true knowing what I know about him.
>
> Ethan was a sweet and sensitive child who became a caring and considerate young man. My son, Robby, is blind and is one year younger than Ethan. Robby and Ethan were not only friends but Ethan always looked out for Robby. They sat together on the school bus and often socialized outside of school. As a parent of a child with a disability, I found so much comfort in knowing that Ethan had Robby's back.
> ...
> I fully understand the seriousness of what Ethan has done and sincerely believe that he made a terrible mistake. He is remorseful. I love Ethan and I beg you for leniency in this case. Ethan is so young and I am confident that he will go on to live a productive and honorable life with the support and guidance of his parents, extended family, and all who love him.

**(Letter of Elisa Dahill, family friend)**

> Judge, please understand that these actions are extremely out of character for Ethan. In the ten years that I have known Ethan, he has been a respectful, loving, helpful, and compassionate young man. Furthermore, I know for a fact that he grew up surrounded with loving parents, a loving sister, and many loving friends. Ethan has been a dedicated community servant for most of his young adult life helping the less fortunate and individuals with severe disabilities. I have found Ethan to be sensitive, caring, and an advocate for his friends and with the children and adults he worked for. Ethan was always excited about helping others and providing for others. Ethan had many friends and got along with everyone.
>
> I know that Ethan expresses regret, remorse, and shame for his actions and will show that he has learned from this choice. I know that Ethan is a caring young man who still wants to contribute to his community in a positive way.

**(Letter of Justin Gala, family friend)**

*C. Excessive Imprisonment Would Entail Excessive Hardship to Himself and His Family*

33. Mr. Lipper understands the stark reality that he faces significant prison time and all of the hardship that such a sentence entails. His life and career plans will be placed

8

on hold for a significant amount of time.  Further, Mr. Lipper's inevitable absence due to this offense will certainly create a void in the lives of his family members, particularly, those of his parents, who have seen him only sparingly since his arrest.

34.     At the same time, Mr. Lipper's incarceration experience will be different that most other Federal inmates for several reasons.  First, he has faced bullying while incarcerated due to his sexual orientation, and actually faced a legitimate threat that resulted in action by the Seminole County Sheriff to protect his safety.  Second, he will be significantly younger than the average Federal inmate, and be at a disadvantage due to his youth.  Third, the nature of his offense will subject him to additional ostracization and safety concerns than an inmate convicted of the average Federal offense.

35.     As a result, this Court should take into account the fact that Mr. Lipper's incarceration will be a significantly more difficult.  As a result, this Court should impose a minimal sentence of incarceration to mitigate the harm.

### C.  *Defendant's Conduct Was the Result of Circumstances Unlikely to Recur*

36.     As stated above, Mr. Lipper understands that his criminal record will reflect a Federal conviction and that any future criminal conviction, particularly any conviction involving a sex crime or related offenses, will likely be enhanced as a result of this conviction.  With this understanding in mind, the circumstances that gave rise to the instant offenses are unlikely to recur.  It is noted that Mr. Lipper has no prior history of a related offense, a usual indicator for those disposed to engage in this type of behavior.

37.     Mr. Lipper further understands that it is a virtual certainty that his sentence will include some form of intensive supervision as well as a special condition that he participate in some form of alcohol abuse treatment, remain drug and alcohol-free, and participate in psychological counseling.  He also knows that with a prior criminal record, and being subjected to Supervised Release, he will be subject to intense scrutiny.  That said, it is unlikely that he would re-offend because he will be so closely monitored, and would be motivated to live a law-abiding life.

38.     In any event, Mr. Lipper will complete supervision with the insight that can only come with life experience, and since he will be older, wiser, and more experienced, he will be able to see situations like those that resulted in the instant prosecution develop well in advance and he will be well equipped to avoid such situations.  Because of these developments, it is highly unlikely that he will ever place himself in a future position where he would be involved in this type of criminal activity.

## IV. LACK OF AGGRAVATING FACTORS

39.     The defense respectfully submits that there are no aggravating factors for this Court to properly consider.  Assuming arguendo that there is an aggravating factor, it would be substantially outweighed by the mitigating factors set forth herein.

## V. ADDITIONAL CONSIDERATIONS

40. In a speech given at the 2003 American Bar Association Annual Meeting, Supreme Court Justice Anthony Kennedy delivered the keynote address, challenging the legal profession and the ABA to begin a new public discussion about American sentencing and corrections policies and practices. In discussing the problems plaguing our present criminal justice system, he stated:

*Our resources are misspent, our punishments too severe, our sentences too long.*

41. Justice Kennedy also stated candidly that **"*every day in prison is much longer than most any day you have ever spent.*"** In response to Justice Kennedy's comments, the <u>Justice Kennedy Commission</u> was formed in 2004, which set forth the following recommendations in its report to the United States House of Representatives:

- Lengthy periods of incarceration should be reserved for offenders who pose the greatest danger to the community and who commit the most serious offenses

- Alternatives to incarceration should be provided when offenders pose a minimal risk to the community and appear likely to benefit from rehabilitation efforts

42. Although public safety is a major public concern, the public also believes in rehabilitation. In a recent nationwide survey conducted by the National Center for State Courts, almost eighty percent (80%) of 1,502 people surveyed believed that under the right conditions, many offenders can turn their lives around and become productive, law-abiding citizens. The same number (88%) believe rehabilitation and treatment programs should often be used as alternatives to prison."

## VI. OBJECTIONS TO PRE-SENTENCE REPORT AND APPLICATION FOR DOWNWARD ADJUSTMENT

43. The defense respectfully objects to Paragraph # 39 and the 5-level enhancement under Guideline §4B1.5(b)(1), and consequently the Guidelines calculations in Paragraphs # 42 and 76. In order for that provision to apply, two requirements must be met: (a) the instant offense must be a "covered sex crime," and (b) the defendant must have engaged in a "pattern of activity involving prohibited sexual conduct."

44. Application Note 2 defines a "covered sex crime" and the defense concedes that under the definition set forth in Note 2, the instant offense is a "covered sex crime." The definition includes offenses committed under Chapter 117 of Title 18 of the United States Code, Part 1.

45. However, Application Note 4 defines both "prohibited sexual conduct" and "pattern of activity." Note 4(B) defines "pattern of activity" to include instances where a defendant engaged in activity involving "prohibited sexual conduct" with a minor on two prior occasions.

10

46. To qualify as "prohibited sexual conduct," the instant offense must be an (i) offense described in 18 U.S.C. § 2426(b)(1)(A) or (B), or (ii) the production of child pornography, or (iii) trafficking in child pornography **only** if the defendant had a prior felony conviction for trafficking in child pornography. It is clear from the PSR that neither (ii) nor (iii) are ruled out, as Defendant has not been charged with production of child pornography, and he has no prior criminal history. This leaves the only possibility to qualify as "prohibited sexual conduct" offense described in 18 U.S.C. § 2426(b)(1)(A) or (B).

47. 18 U.S.C. § 2426, entitled "Repeat Offenders" provides enhanced punishment for people convicted of subsequent sex offenses. Subsection (b) defines the term "prior sex offense conviction" as a **prior** conviction for an offense covered under Chapters 109A, 110, or 117 of Title 18, part 1. See United States v. Perez-Colon, 62 F.4th 805 (3d Cir. 2023); United States v. Roscoe, 853 Fed. Appx. 479 (11th Cir. 2021) (assuming that a prior conviction satisfies the requirement for "pattern of activity"). Here, because there is no prior conviction, and none of the other provisions apply, Guideline § 4B1.5(b) does not apply.

48. The defense respectfully submits that the Total Offense Level should be 27, with a Criminal History Category I designation.

## VII. ASSESSMENT SUMMARY & CONCLUSION

49. Since I began representing Mr. Lipper, I have been impressed with his honesty and sincere expression of remorse that he has caused his family, and most importantly his children, the pain and embarrassment associated with his arrest and conviction. Despite the nature of his conviction and the underlying conduct, Mr. Lipper continues to receive the closest support from family and friends. In the end, I believe Mr. Lipper is a good man who made a very bad decision for which he shall live for the rest of his life, long after his release from prison.

50. Mr. Lipper's plans for the future include participating in all of the support programs available to him so that he will have the confidence and the tools necessary to repair his relationships with his family and friends. He intends to continue his studies, occupational skill development, and personal development and maturation while in the custody of the Bureau of Prisons, as he has done since his arrest. The love and support from his family and friends has caused Mr. Lipper to re-evaluate his life choices that put him in the position in which he finds himself.

51. Mr. Lipper has the ability to re-enter society and become a productive individual. He fully understands that if this Court were to show him leniency to reform his life and make the necessary positive changes, there would be no second chances. He knows he has a lot at stake, and he truly believes that he has the ability to meet this challenge. The sooner he is given the opportunity, the sooner he will re-enter society as a productive member and prove himself to this Court, to his family, and to the community.

52. Sentencing reform has tried to implement into practice a basic penological theory that comports with American Constitutional ideals of due process of law and equal protection of the law – that the punishment should fit the crime and the individual. The United States Supreme Court recognized this principle that "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime. The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." *See Williams v. New York*, 337 U.S. 241, 248 (1949).

53. Based upon all of the information that this Court has at its disposal, any of the alternative sentences proposed above are more than sufficient to fit the crime. As such, the defense respectfully requests that this Court sentence Mr. Lipper as follows:

(A) In the event that the Court is permitted to go below the statutory minimum sentence, a sentence at the low end of the Guidelines range of a Level 27 aty Criminal History Category I, or in the alternative

(B) Impose a non-Guidelines sentence below the applicable Guidelines; or in the alternative

(D) Impose a sentence at the low end of the applicable Guidelines should the defense objections be overruled, and

(E) Recommend the Attorney General to place Mr. Lipper in a Federal Correctional Institution in accordance with **Exhibit D** or at a location as geographically close as possible to Manalapan, New Jersey, to permit Mr. Lipper's family and friends to visit him without undue burden or hardship; and

(F) Impose no fine or financial penalty at sentence, due to Defendant's inability to pay such a fine; and

(G) Recommend to the Bureau of Prisons that Defendant be permitted to enroll in all available vocational and educational training programs, and rehabilitation counseling that are available; and

(H) Grant such other and further relief that this Court may deem just and proper.

Dated: Orlando, Florida
November 6, 2023

Respectfully Submitted,

*/s/Jaime T. Halscott*
**Jaime T. Halscott, Esq.**
*Attorney for Defendant*
2431 Aloma Avenue, Suite 124
Winter Park, Florida 32792
(o) 407-255-2164
(f) 855-224-1671
jhalscott@appealslawgroup.com

### Certificate of Service

I hereby certify that, on November 6, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notification to Rachel S. Lyons, Assistant United States Attorney.

Dated: Orlando, Florida
November 6, 2023

Respectfully Submitted,

*/s/Jaime T. Halscott*
**Jaime T. Halscott, Esq.**
*Attorney for Defendant*
2431 Aloma Avenue, Suite 124
Winter Park, Florida 32792
(o) 407-255-2164
(f) 855-224-1671
jhalscott@appealslawgroup.com