UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                           CASE NO. 6:23-cr-20-WWB-LHP

ETHAN LIPPER

### **SENTENCING MEMO**

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, provides this sentencing memorandum.

The Defendant, Ethan Lipper, engaged in a course of conduct targeting victims who are among the most impressionable and vulnerable in our society: children. He urged children to engage in sexual acts with adults or other children. He urged adults to abuse or continue to abuse children. Worse still, he wanted proof. He asked them to document this heinous behavior so that the sexual abuse of children would be permanently memorialized and available to be traded, living in perpetuity on the internet. Given the extensive nature of the Defendant's egregious conduct, the United States intends to seek a four-level upward variance. The resulting guidelines range would be 188-235 months. A sentence within that adjusted range is just and appropriate but no greater than necessary to meets the goals of sentencing delineated in 18 U.S.C. §3553(a).[1] It is the sentence the defendant has earned.

---

[1] The United States concurs with the U.S. Probation Officer's assessment that the enhancement under USSG §4B1.5(b)(1) as described in its initial PSR response and agrees with the guidelines range described in the initial PSR at paragraph 76.

Some of the 3553(a) factors are discussed in turn, below.

The Nature and Circumstances of the Offense

The offense of conviction is a serious offense that on its own warrants a severe punishment. The Defendant solicitated an individual he believed to be a 14-year-old minor named "Sam" (who was in fact an undercover detective posing as "Sam" on Kik) to engage in sexual activity.

Defendant identified himself as "Ethan," a 20-year-old living near Universal Boulevard and sent Sam pictures of himself and gave him his personal phone number. Sam reminded the Defendant that he was only 14 years old, and asked if that was problematic. Defendant replied, "I don't mind…Thanks for trusting me…I feel like I'm still a perv lol…But if it's consensual it's not as bad I guess". The Defendant knew what he was doing was wrong, yet he persisted.

Later in the conversation, Defendant and Sam discussed the illegality of meeting up for sex and Defendant's fear of being caught. Sam said, "[w]e can go to jail". Defendant replied, "[n]o you can't lol I can…You would be the victim of a sexual predator…And I could blame you and say you lied about you (sp) age but 14 isn't close to 18 and idk if you look that old lol". The UC replied, "[u] think i look 18?" Defendant replied, "[n]o lol that's why it wouldn't work". The fact that the Defendant again acknowledged that what he was doing was wrong and then contemplated lying to avoid prosecution, demonstrates a complete lack of remorse or concern for his criminal conduct.

As the conversation continued, Defendant discussed in detail the sexual acts he

would perform on Sam. He told Sam, "[m]aybe I can play with your ass a little too if you want…I love a good butt". Sam replied, "Play with it how". Defendant replied, "[h]old it…Finger you maybe…If it smells good I'll lick it too…You can sit on my face". Sam asked Defendant if it hurts. Defendant replied, "[s]ex might hurt and fingering…But not eating it…It feels so good…But with enjoy (sp) lube and patience it will be easy…And a (sp) painless as possible because once you get past that initial pain it feels good". Sam replied, "I dont have lube". Defendant replied, "I can bring some". The conversation even included the possibility of adding another even younger child to the sexual encounter – Sam's fictional 10-year-old cousin.

As part of the grooming process, the Defendant sent Sam sexually explicit videos. One such video depicted an adult male and an approximately 9–11-year-old child. The child performed fellatio on the adult male and the adult male rubbed his erect penis on the child's penis. The adult also massaged the child's buttocks and spread open the child's buttock cheeks, exposing his anus. Defendant did this to provide an example of the acts he intended to perform on Sam. This act was designed to convince Sam that what they were discussing was okay, and to increase his willingness to engage in a sexual act with Defendant. The Defendant's enticement of Sam was prolonged and deliberate. Normalizing the sexualization of children is a grotesque act.

On February 1, 2023, after arranging all the details, Defendant arrived at the predetermined location to meet Sam and was arrested. His phone was seized.

The Defendant has admitted to the above facts, and for this offense alone he deserves a severe sentence. He attempted to pervert the life of a young teenager through conversation, visual depiction of sexual acts performed on and by children, and plans to meet to have sex. He arrived, ready to perform sexual acts on a 14-year-old.

Yet this was just the tip of the iceberg. The FBI's review of the phone revealed that Defendant held sexually explicit conversations with at least 17 individuals who identified themselves as being minors. As of the date of this memorandum, six of those individuals have been located, interviewed, and verified as minors. The Defendant also possessed over 100 images and videos of child pornography.

In his sentencing memorandum, Defendant urges the court to give little weight to any new evidence provided by the government after Defendant's plea. However, the additional conduct reveals the true nature of Defendant's sexual interest in children. It shows a pattern of behavior targeting minors that reflects the seriousness of the offense of conviction, the dangerousness of the Defendant, and the need for the sentence to deter similar conduct.

<u>Protection of the public</u>

The Defendant contends that a below-guidelines sentence is "more than adequate", referencing Doctor Sickler's assessment that Defendant is low risk of recidivism. However, Dr. Sickler did not actually review the evidence in the case. He did not see the extent of Defendant's child pornography collection, nor its variety - targeting infants as well as young teenagers, girls as well as boys, even animals. He has

no knowledge of the online conversations Defendant had day after day, with victim after victim, encouraging them to engage in sexually explicit conduct and to send him the evidence. Further, the tests are only as accurate as the information provided by the subject. There are examples of clearly inaccurate or incomplete information that was provided. For example, the report states, "[o]ther than the communications with the undercover officers and the arrangement to meet that led to his arrest, he [Defendant] denied any other contact of inappropriate nature with minors."

Further, even in the best-case scenario and using these inaccurate facts, Dr. Sickler could not rule out pedophilic disorder, which is defined as six months of intense sexual fantasies, urges, or behaviors involving sexual activity with prepubescent children. Finally, Dr. Sickler still believed that Defendant is at above average risk of reoffending.

Forensic analysis of Defendant's cell phone confirmed that Defendant used his cellular phone to engage in sexually explicit conversations through multiple online applications. On more than one occasion in these chats, Defendant solicited adults and minors to share or produce child pornography. Below are several examples of those conversations. These examples themselves span a five-month time frame, ending February 1, 2023, the date of Defendant's arrest.

Between October 9 and October 26, 2022, Defendant engaged in a sexually explicit Kik chat with user I will refer to as "B-93". B-93 identified himself as being 16 years old at the time. Defendant messaged, "[y]ou sexy (…can I see". B-93 sent a picture of his erect penis in reply. An excerpt of the conversation follows:

DEFENDANT: "Damn baby your sexy as fuck...I would tie you up and tickle you till you cum any day"

B-93: "Mmmm hot"

DEFENDANT: "I'd throw you over my knee and spank you good"

DEFENDANT: "I wanna see you play with yourself"

B-93: "You will sir...So there's a guy that lives near me who's blackmailing me to have sex with him, should I do what he says?...He wants to do some kinky stuff to men...Me"

DEFENDANT: "Let him...Video it...Send it"

B-93: "He's gonna video when we meet"

B-93: (Sends an image of an erect penis)

DEFENDANT: "Fuck sexy...I want to watch the whole thing"

Ben-93: "Hehe I'll give it to you...What should he do to me"

DEFENDANT: "Finger you"

Ben-93: "He's gonna pee on me, fuck me, make me cry and gag...Finger me"

DEFENDANT: "As many as he can fit"

DEFENDANT: "I wanna watch y drink the piss from his cock"

Ben-93: "He's gonna pee up my butt too"

DEFENDANT: "Fuck yes I wanna watch it drip out of you"

Ben-93: "He's gonna do anything he wants to me...He's gonna destroy my ass...His dicks 8 inches"

DEFENDANT: "I want him to fuck you raw...And if it hurts he keeps going"

DEFENDANT: "When is he gonna abuse you"

Ben-93: "By the end of this month"

Through its investigation, the FBI identified Ben-93 and verified he was in fact 16 years old at the time of this conversation.

Defendant engaged in a sexually explicit Kik chat with an individual I will refer to as "O-09" on January 23 and 24, 2023. Defendant and "O-09" met in Kik group chat "#gaykids1000". "O-09" identified himself as 14 years old. An excerpt of the conversation is listed below:

DEFENDANT: "How old r you?"

O-09: "14"

DEFENDANT: "R you into dogs?"

O-09: "No God no"

O-09: "...U big?"

DEFENDANT: "Ya wbu"

O-09: (Sends an image of an erect penis) "Idk"

DEFENDANT: "You are"

O-09: "Thx can I see u"

DEFENDANT: (Sends an image of his erect penis)

O-09: "Wow nice man"

Through its investigation, the FBI identified "O-09" and verified he was 14 years old at the time of this conversation.

Defendant engaged in a Kik chat with user "bambazzzz0000" on January 23 and 24, 2023. The conversation appears to be between Defendant and an adult male who claimed to be sexually abusing his daughter. An excerpt of the conversation is listed below:

DEFENDANT: "How do you touch her?"

bambazzzz0000: "I mean she likes to lay, cuddle"

DEFENDANT: "Awe nice do you sleep naked when she's in bed with you?"

bambazzzz0000: "I slip off everything...She cuddles up"

DEFENDANT: "Have you ever been inside her?"

bambazzzz0000: "Not that wife knows lol"

DEFENDANT: "That's hot as fu k...What have you done?"

bambazzzz0000: (Sends an image of an adult male engaged in penile/vaginal sex with an unconfirmed small-framed female, potentially a child.)

DEFENDANT: "Look at you go...Ur so big compared to her...How good did that feel"

bambazzzz0000: "She's tiny"

DEFENDANT: "Yes she is...Does she feel better then ur wife?"

bambazzzz0000: "Much better"

DEFENDANT: "Have any videos?"

Defendant had a sexually explicit Kik chat with user I will refer to as "A-12" from January 20, 2023 through February 1, 2023. "A-12" identified himself as 12 years

old. Defendant instructed the 12-year-old to perform oral sex and anal sex on an adult male and requested oral sex from the child. Defendant also requested

the 12-year-old child to videotape him being raped and send the video. The 12-year-old child sends alleged images of himself being anally raped by an adult male. Defendant also encouraged the child to continue engaging in this behavior. An excerpt of the conversation is listed below:

DEFENDANT: "Maybe you can ask if he wants his bum cleaned too like his penis"

A-12: "But Tom said I can't clean bums yet"

DEFENDANT: "Even with your mouth?...You should try it...I could use a good cleaning"

A-12: "Oh id help you with that...whatcha need to clean"

DEFENDANT: "Everything...Between my balls for sure"

A-12: "Sure Id help with that...Your penis too?"

DEFENDANT: "Yes...It would be different for you because I don't have the skin over my tip"

A-12: "Well you'd tell me how then...Do you have liquid tho?"

DEFENDANT: "Yes I have the liquid...Just not the skin you can pull back. It is basically already pulled back always"

A-12: "Ooh pretty handy and sweaty like mine or Dan's"

A-12: "Tom's was really sweaty in the morning"

DEFENDANT: "My balls get super sweaty"

A-12: "Oh then balls need good cleaning"

DEFENDANT: "Yes they do...My bum too...Between my cheeks gets sweaty"

A-12: "Sure whatever you say bro 🤝"

DEFENDANT: "Your a good listener and boy...You do what needs to be done...You will be super popular with the guys who need cleaning"

A-12: "Oh do I need to help other guys too?"

DEFENDANT: "You can...Like if ur at the gym and they look like they need it maybe you can offer"

DEFENDANT: "Do you ever shower at the gym?"

A-12: "Yea"

DEFENDANT: "Do you ever see anyone with a hard penis ?"

A-12: "Rarely"

DEFENDANT: "If you ever do you can offer to help them with it"

A-12: "Dan's here ttyl"

DEFENDANT: "Have fun...Don't forget to sneak a picture of him"

DEFENDANT: "How was Dan and Tom today?"

A-12: "Great! As you said I'm twice as clean 😁"

DEFENDANT: "Did Dan clean ur bum?"

A-12: "I wanted to take a vid of me cleaning his penis and asked him if I could record it and he was like nah we don't need to I said pretty please several times but he was being stubborn then I said I'd do anything if he lets me record it and he was like oh yea? I said sure ask away he

10

thought for a couple of secs and asked to come with him to the room cuz for

some reason he called me up to the toilet again and was peeing when I

entered then he explained that he really liked the way I cleaned it

yesterday so he asked for it again. So when we came to the room he asked

again if I really do whatever he says I said yea he then started touching my

body for some reason turned me around and lowered my undies, squeezed my bum

and said i know what you can do and started using the finger method saying

he'll let me record just only one video and asked my phone but also asked me

to promise I won't show anyone cuz it's a secret method 🙄 and then he

cleaned my bum...That was about Daniel lol"

DEFENDANT: "Did you have fun with him?...So you have a video? Can you share

with me?"

A-12: "Sure I asked it just to show you 😁...Ik you won't share it

with anyone"

DEFENDANT: "Hehe your awesome I can't wait to learn from Daniel...Did you like

how he cleaned you and touched you?"

A-12: "Yea he cleaned really nice"

A-12: sent an approximate 1 minute video of an adult male anally

raping an approximate 10-12 year old boy (file name: 119e12b6-9538-4e8da27b-

4327c0d47d51)

DEFENDANT: "Wow he has a big penis"

A-12: "What about the cleaning? Was he doing it right?"

DEFENDANT: "He was doing it good...It's good better cleaning...You take it well...Ur gonna be the cleanest boy ever"

A-12: "Sad he couldn't clean deep enough 😕"

DEFENDANT: "Me too he seemed like he didn't go in that much"

A-12: "Yea but Tom did 😄"

A-12: "Btw Tom managed to put his penis in my bum pretty easy"

A-12: "Maybe it's Daniel's liquid that helped 🤔cuz it still stayed inside when Tom was cleaning my bum"

DEFENDANT: "Yes that makes sense...Your bum was already prepped for toms dick...Did he say if it felt better today?"

A-12: "Yea he said it's being cleaned easy and thoroughly and faster than usual it was so funny to hear those sounds😄"

A-12: "Well first I sat down on his penis and he was moving me up and down...Then he put on the side of the bath and stayed behind me and he didn't put his penis slowly as usual but it went in pretty quick and he started cleaning my bum really fast and his body was touching my cheeks making slapping sounds 🤣...Sammy was laughing hard as well 🤣"

DEFENDANT: "That's so fun. Sounds like he was doing good cleaning you"

DEFENDANT: "Do you like the way it feels when he cleans you? Or do you just like being clean?"

A-12: "I like being clean 😊...Feels so good to know it...Oh I have a pic of my bum after Tom's cleaning wanna check it?"

DEFENDANT: "Sure"

A-12: (sends an image of a anus with liquid dripping out of it)

DEFENDANT: "It gets cleaner every time"

A-12: "And wider for some reason...But I think it's just cuz I got cleaned twice yesterday"

A-12: "Daniel said he's gonna come again today with a friend...He said they both workout at the gym and will come after it"

A-12: "Do you think it's okay what I'm doing? I mean my uncle is okay cuz he's family....And these guys are random"

DEFENDANT: "It's up to you. If you don't feel comfortable you can say no...If you enjoy it then who is stopping you?"

Additionally, forensic analysis located 35 videos containing child pornography on Defendant's cell phone. The videos depict children ranging in age from ages 10 to infant, girls and boys, numerous different sexual acts. One involved bondage. An example of one of the videos: File name: 4ffe5eb2-160c-4892-95ff-e8ddc6a848c7.mp4. A 43-second video containing an adult male anally penetrating a 6 to 12-month-old female child. During the video, the child is heard screaming and crying the entire time. At the end of the video, the adult male ejaculates in the child's anus.

122 images of child pornography were located on Defendant's cell phone, four contained infants or toddlers. An example of one of those images: File name: VgxkHJaJ. Image containing an approximate 1-3-year-old male performing oral sex on an adult male erect penis.

The descriptions above are just a sample of the Defendant's conduct online. Similar activity occurred repeatedly, across months. The offense of conviction was not a one-off mistake or an act that was out of character. It was the culmination of months and months of the Defendant exploring his sexual interest in children and acting on it. The Defendant was a danger to anyone he could reach on the internet. He condoned and encouraged the sexual abuse and exploitation of a 12-year-old by his uncle. He viewed and maintained videos and images of horrible abuse against infants. The impacts of child pornography live on and on. Defendant created more victims of a never-ending cycle of abuse and humiliation. This is not a scenario where there was only a notional minor involved and no actual victims who were harmed. Defendant's impact was very real to the six children that have been identified, and others that hopefully will be identified in the future.

<u>The Need for the Sentence Imposed to Reflect the Seriousness of the Crime, Promote Respect for the Law, and to Serve as Punishment</u>

The United States proposes a sentence between 188-235 months. This sentence appropriately captures the severity of the Defendant's conduct and will hopefully promote respect for the law and adequately punish him for the irreparable harm he has caused to numerous children. The Defendant's criminal conduct is not only serious,

but it is deliberate and repeated. His actions have touched the lives of real children. As described above, the Defendant knew that his conduct was criminal, but it did not stop him. He knew the stakes were high, but it did not stop him.

To assess his risk of reoffending, we need only look to the Defendant's own comments online. For example, Defendant told one person that he "need[s] to find me a boy." He talked about how he would "accidentally" grab the buttocks or genitals of little boys when he coached swim lessons. When an individual told the Defendant that that person had sex with a 21-year-old when he was just 13 years old, Defendant replied, "[t]hat's so hot…I wish it wasn't taboo". Finally, when discussing the potential of having children of his own, Defendant said "I would want two…at different ages…so I can teach the older and he can help me teach the younger" in reference to sexual activity. He estimates that he has had between 150-200 sexual partners, many of whom he met on internet applications, the same way that he met "Sam". The Defendant is a danger to society and if he is release after 10 years he will be in his early 30s. He will be a high risk to reoffend, and even one act of sexual abuse against a minor is too many.

The need for deterrence

The Defendant and others who commit similar crimes need to be deterred. The lifelong and dramatic consequences of sexually targeting and exploiting minors are too high. He knew the serious risks involved with his conduct and yet he proceeded anyway. The Defendant needs to understand the depth of his wrongdoing and a comparatively light sentence will not accomplish that goal. In Defendant's own words,

15

he "hates that it's wrong for [him] to like what [he] likes." He does not truly believe his conduct is wrongful, he just wishes it were not against the law.

<u>Defendant's personal history and characteristics</u>

The Defendant pled guilty and has taken responsibility for attempting to meet up with a 14-year-old for the purposes of having sex. Defendant also agreed to speak with law enforcement and provided additional information about his own criminal conduct as well as the criminal conduct of others. However, this information was already known to law enforcement or was insufficient to provide substantial assistance in their investigation. For example, most of the information provided was already located in his phone, which law enforcement had lawfully seized and searched. The Defendant could not provide any information to assist in locating any of the 17 live victims. The United States provides this information to the Court as additional matters in mitigation, however, the information Defendant provided does not rise to the level of substantial assistance under Section 5K1.1.

It is not lost on the government that Defendant is in his early 20s. He has some education, technical skills and no criminal history. Further, the Government appreciates that Defendant was brought up in a loving home and community; he will need that support and encouragement during and upon his release from confinement. However, this loving environment existed before and during his criminal conduct. Those vouching for his character refer to his actions as "a mistake" or "out of character." Yet the moments that are most illuminating about one's character are those that occur when conduct is veiled by anonymity: when no one is looking. Defendant

16

knew right from wrong. He proceeded with his criminal conduct fully aware of the potential consequences. Evidently, he thought the potential reward was worth the risk. Now he must face the consequences of his actions.

Conclusion

Because the United States agreed to dismiss Count Two by operation of the plea agreement, the Defendant's mandatory minimum term of imprisonment is reduced from 15 years to 10 years, and his guidelines range was reduced from life to 121-151 months. However, this guidelines range does not adequately capture the totality of the defendant's conduct. To sentence him within the guidelines range of 121-151 months would result in a sentence disparity, as often offenses against children result in higher sentences.

Wherefore, the Government intends to request this court vary upward four-offense levels and to sentence the Defendant within the resulting guidelines range of 188-235 months.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    */s/ Rachel S. Lyons*
Rachel S. Lyons
Special Assistant United States Attorney
USA No. 215
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail: Rachel.Lyons@usdoj.gov

**U.S. v. ETHAN LIPPER**                    **Case No. 6:23-cr-020-WWB-LHP**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 9, 2023, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

       Jaime T. Halscott, Esq.


        /s/ Rachel S. Lyons
        Rachel S. Lyons
        Special Assistant United States Attorney
        USA No. 215
        400 W. Washington Street, Suite 3100
        Orlando, Florida 32801
        Telephone:   (407) 648-7500
        Facsimile:    (407) 648-7643
        E-mail: Rachel.Lyons@usdoj.gov